**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BETTY SHINN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 08-0444-CG-N** |
| | ) | |
| **CITY OF MOBILE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on defendant's motion for summary judgment (Doc. 42), plaintiff's opposition to the motion (Doc. 52), and defendant's reply (Doc. 56). The court finds that plaintiff has failed to support and abandoned her claims brought pursuant to the ADEA and the ADA. The court further finds that plaintiff has not established a prima facie case of racial discrimination nor has she shown that the City of Mobile's proffered legitimate reasons for its actions are unworthy of credence. The court finds that plaintiff has also failed to show that the proffered legitimate reasons for the City of Mobile's alleged retaliatory actions were not the City's actual motivation. Finally, the court finds that plaintiff has failed to demonstrate that the conduct she alleges was harassing was based on plaintiff's race or that it was sufficiently severe or pervasive to create a hostile work environment. Therefore, defendant's motion for summary judgment is due to be granted as to all of plaintiff's claims.

## FACTS

The plaintiff in this case is a black female, proceeding pro se. She filed a handwritten

complaint asserting claims against the City of Mobile under "Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) the ADA." (Doc. 1, p. 2).  Plaintiff's claims arise from her employment with the City of Mobile.  She became employed with the City of Mobile in 1994 as Secretary II in the Public Services Administration Department (Doc. 45-1, pp. 4-5).   Plaintiff claims that other secretaries were promoted with no additional education or training. (Doc. 45-1, pp. 6-7).  On July 20, 1995, the City requested that the plaintiff be promoted from Secretary II to Secretary III.  However, plaintiff admits that the Rules of the Mobile County Personnel Board, which is a separate entity from the City of Mobile, prohibited plaintiff from being promoted to Secretary III until May 24, 1997. (Doc. 45-1, pp. 8-9, 51-52; Doc. 45-2; Doc. 45-3; Doc. 45-4).

Plaintiff requested a transfer and was transferred to the Mobile Fire-Rescue Department's Bureau of Fire Prevention on October 2, 2004. (Doc. 45-1, pp 10-11; Doc. 45-5).  Patsy Lilley, a Caucasian Secretary II in the Bureau of Fire Prevention,  retired effective December 1, 2004. (Doc. 45-1, p. 19; Doc. 45-8).  After Ms. Lilley retired, plaintiff was the only secretary in the Bureau of Fire Prevention. (Doc. 45-7).

On May 26, 2005, plaintiff sent an e-mail to Mayor Dow's Chief of Staff, Al Stokes, requesting leave with pay to attend a class in Paris, France. (Doc. 45-6, ¶ 5).  Plaintiff's e-mail did not follow the Mobile-Fire Rescue Department rule which requires that employees use the chain of command for transacting departmental business. (Doc. 45-6, ¶ 5).  On August 2, 2005, plaintiff again e-mailed Mr. Stokes regarding her request for leave with pay. (Doc. 45-1, p. 42).  On August 16, 2005, plaintiff was issued a letter of reprimand for the emails. (Doc. 45-6, ¶ 5).  Plaintiff had filed a grievance on August 5, 2005 regarding the denial of her request for leave with pay.  The letter of reprimand was rescinded and removed from plaintiff's file because the

grievance was pending. (Doc. 45-25, Doc. 54-1, pp. 39-41).  Plaintiff was granted leave to attend

the class, but without pay. (Doc. 45-1, pp. 43-44).  The City denied plaintiff's grievance because

the class was not required for her job. (Doc. 45-9).  The Mobile County Personnel Board held a

hearing on September 21, 2005 regarding plaintiff's grievance and found that plaintiff was not

entitled to pay during her leave of absence. (Doc. 45-1, pp. 43-45).

On January 9, 2006, Assistant Chief Pappas directed correspondence to plaintiff

regarding her excessive absenteeism due to illness and, from then on, plaintiff was required to

submit a doctor's note whenever she used sick leave. (Doc. 45-1 pp. 60-62).  Plaintiff asserts that

other secretaries, like Peggy Taylor (white female) who had more time off, were not required to

submit a doctor's note. (Doc. 45-1, p. 62).

Plaintiff claims she was discriminated against by not being permitted to work from 8:00

a.m. to 5:00 p.m.  The Bureau of Fire Prevention is open from 7:00 a.m. through 4:00 p.m. and

all employees in the Fire Prevention Division, including plaintiff, work those hours.(Doc. 45-1,

p. 28; Doc. 45-7, ¶ 4).  Plaintiff's lunch hour was set for a specific time each day because she

was the only secretary in the Bureau of Fire Prevention.  An inspector from the field would cover

the desk so that it was not left unattended during plaintiff's lunch hour. (Doc. 45-1, p. 58; Doc.

45-7, ¶ 5).  There are secretaries in other divisions who work from 8:00 a.m. to 5:00 p.m.,which

are the office hours of those divisions (Doc. 54-1, pp. 29-32; Doc. 45-6, ¶ 3; Doc. 45-8, ¶ 4).

One of the divisions, Fire Supply, is open from 7:00 a.m. to 5:00 p.m. and one secretary works

from 7:00 a.m. to 4:00 p.m. while the second secretary works from 8:00 a.m. to 5:00 p.m. (Doc.

45-6, ¶ 4).

On February 15, 2006, plaintiff filed a grievance regarding Inspector Lavelle Ollhoft,

alleging that he was yelling at her,  and requested that plaintiff be transferred and/or Inspector

Ollhoft receive training.(Doc. 45-12).  Chief Sims held a grievance conference with plaintiff and

implemented mandatory supervisory training for Inspector Ollhoft. (Doc. 45-1, pp. 21, 25-26).

Plaintiff filed another grievance on March 27, 2006, regarding allegations of a hostile work

environment created by Ollhoft. (Doc. 45-13).  Chief Simms conducted an investigation of the

grievance, but shortly after this, plaintiff no longer had any problems with Inspector Ollhoft.

(Doc. 45-1, pp 27; Doc. 45-14).

    In October 2006, plaintiff filed a grievance against Chief Dean, Assistant Fire Chief Billy

Pappas, and Fire Marshall Mark Trenier.  The Mobile County Personnel Board conducted a

hearing on January 24, 2007, and addressed the concerns raised.

    On November 2, 2006, Chief Sims conducted a conference with plaintiff to discuss

overtime. (Doc. 45-16; Doc. 53, p. 4).  During the conference, plaintiff again requested a

transfer. (Doc. 45-1, p. 122).  Because there were no available Secretary III positions in the Fire

Department, plaintiff was transferred to the Mobile Communications Division, the 9-1-1

Communications, where she received the same salary and benefits. (Doc. 45-7, ¶ 8).  To be

transferred outside the Fire Rescue Department, plaintiff would have to find an available position

in another department and her transfer would then have to be approved by the department where

she wanted to be transferred. (Doc. 45-6, ¶ 3).  She was told of the transfer on Friday, January 5,

2007, and was to report to the new location the following Monday. (Doc. 45-1, p. 46).

According to the City of Mobile, it is not uncommon for employees of the Fire Rescue

Department to be notified at the end of the week that their work location has been changed

beginning with the next working day. (Doc. 45-6, ¶ 4).  The timing of the notification was in

accordance with the normal process used to implement transfers. (Doc. 45-6, ¶ 4). Plaintiff complains that she should have been afforded a hearing before being reassigned and believes she was transferred because she filed a grievance. (Doc. 45-1, pp. 50-51).

Plaintiff also believes she was discriminated against because she was not allowed to use her uniform allowance to purchase a uniform jacket. (Doc. 45-1, pp. 69-71). According to the City of Mobile, plaintiff was not allowed to purchase the uniform jacket because plaintiff chose to wear civilian clothes on a daily basis and the uniform jacket can only be worn with the entire uniform. (Doc. 45-17, ¶ 3).

Plaintiff complains that her desk was moved on three occasions after she began working in the Communications Department with the purpose of harassing plaintiff. According to the City of Mobile, her desk was moved first towards the back, closer to the Administrative office, so that she was not sitting out in the middle of the room. (Doc. 45-17, ¶ 4). Her desk was moved a second time while some remodeling was being done, and a third time once the construction was completed. (Doc. 45-17, ¶ 4).

Plaintiff was verbally counseled on August 17, 2007, for arriving late to work without contacting her supervisor to advise that she would be late. (Doc. 45-17, ¶ 5). Plaintiff believes this counseling session was a form of harassment and racial and sexual discrimination.

Plaintiff also believes that she was denied a request to attend an employee health fair on October 25, 2007, as a form of harassment and retaliation. (Doc. 45-1, pp. 53-54). According to the City of Mobile, plaintiff was not allowed to attend because she needed to make further progress on her current assignment. (Doc. 45-17, ¶ 7).

Plaintiff also claims she was retaliated against when John Bell denied her the use of the

City float for Central High School's reunion. (Doc. 45-1, pp. 65-68).  Plaintiff was out on

medical leave at the time and did not personally contact Bell about the float but had another

individual contact Bell on her behalf. (Doc. 45-20, ¶ 2).  According to Bell, he was not aware

that plaintiff had filed any complaints or grievances against the City and states that he was no

longer the proper person to grant permission to use the float. (Doc. 45-20, ¶ 2).

Plaintiff filed a charge of discrimination with the EEOC on June 29, 2007, alleging that

she was discriminated against on the basis of her race and retaliated against by being transferred

to the 911 Communications Department. (Doc. 45-21).  Plaintiff received a Dismissal and Notice

of Rights Letter dated April 30, 2008, which stated that "[t]he EEOC is unable to conclude that

the information obtained establishes violations of the statutes" and advising plaintiff that she can

file a lawsuit based on her charge, but that it must be filed within 90 days of her receipt of the

notice. (Doc. 45-22).  The plaintiff was on leave from November 1, 2007, through May 1, 2008,

and retired effective March 1, 2008. (Doc. 45-1 p. 3; Doc. 45-23).  Plaintiff filed the current

action on July 29, 2008.

Plaintiff admits that she has no evidence that she was discriminated against on the basis

of her age or any alleged disability. (Doc. 45-1, pp. 63, 72).

## LEGAL ANALYSIS

## A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604,

608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B. Exhaustion of Administrative Remedies

The City of Mobile asserts that plaintiffs claims are limited by the Statute of Limitations. Filing an administrative charge of discrimination with the EEOC is a prerequisite to a private civil action brought pursuant to the provisions of Title VII , the ADA and the ADEA.  Under Title VII, an employee is required to file a charge of discrimination with the EEOC within 180 days of the alleged act of discrimination. See 42 U.S.C. § 2000e-5(e); Stuart v. Jefferson County Dept. of Human Resources, 2005 WL 2456420, *2 (11th Cir. Oct. 6, 2005) (""In Alabama, a non-deferral state, a plaintiff must file a Title VII discrimination charge with the EEOC within 180 days of the alleged violation." quoting Tipp v. AmSouth Bank, 76 F.Supp.2d 1315, 1327 (S.D. Ala. 1998), aff'd, 229 F.3d 1166 (11th Cir. 2000)).  The ADA has incorporated Title VII's administrative filing requirements. See 42 U.S.C. § 12117(a).  Likewise, to file a civil lawsuit for age discrimination, the ADEA requires that plaintiff first file a discrimination complaint with the EEOC "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1). The 180 days begins running from the date the employee knows or reasonably should know that he or she has been discriminated against. Stafford v. Muscogee County Board of Education, 688

8

F.2d 1383, 1387 (11th Cir. 1982); Hill v. Metropolitan Atlanta Rapid Transit Authority, 841 F.2d 1533, 1545 (11th Cir. 1988).  The purpose of the requirement is to "put defendants on notice of adverse claims and prevent plaintiffs from sleeping on their rights." Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628 (1983); see also Kilgo v. Bowman Transportation Co., 789 F.2d 859, 877 (11th Cir. 1986).  "If an employee fails to file an EEOC charge before the 180-day limitations period elapses, his or her subsequent lawsuit is procedurally barred and must be dismissed for failure to exhaust his or her administrative remedies." Brewer v. Alabama, 111 F.Supp.2d 1197, 1204 (M.D. Ala. 2000) (citing Delaware State College v. Ricks, 449 U.S. 250, 256, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and Everett v. Cobb County Sch. Dist., 138 F.3d 1407, 1410 (11th Cir. 1998)).  An employee may then commence a Title VII civil action within 90 days of obtaining an EEOC right-to-sue letter.[1]  42 U.S.C. § 2000e-5(f)(1); Green v. Union Foundry Co., 281 F.3d 1229, 1233-34 (11th Cir. 2002). Once the defendant contests this issue, the plaintiff has the burden of establishing that he met the ninety day filing requirement. Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1010 (11th Cir. 1982).[2]

---

[1] The time limit is non-jurisdictional. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982).  Because it is non-jurisdictional, the time limit is subject to equitable tolling, permitting a court to disregard the late filing under certain circumstances. Id.  "[T]raditional equitable tolling principles require a claimant to justify her untimely filing by a showing of extraordinary circumstances." Jackson v. Astrue, 506 F.3d 1349, 1353 (11th Cir. 2007). These include "fraud, misinformation, or deliberate concealment." Id. at 1355. However, plaintiff has not argued that tolling applies and the court is not aware of any facts that would support an equitable tolling of the time limitations.

[2] The Jackson court found that the 180 and 90 day time limitations were not jurisdictional and therefore were waived unless specifically raised.  Jackson, 678 F.2d 992, 1010 ("[A] plaintiff must generally allege in his complaint that 'all conditions precedent to the institution of the lawsuit have been fulfilled.' If the defendant doubts the veracity of the plaintiff's allegation, in whole or in part, then the defendant may deny 'specifically and with particularity' that the preconditions have not been fulfilled.  The plaintiff then bears the burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied.  If, however, the defendant does not deny the satisfaction of the

The City of Mobile asserts that plaintiff failed to timely file a charge with the EEOC regarding any events that occurred before plaintiff was transferred to the Bureau of Fire Prevention.  Plaintiff was transferred to the Mobile Fire-Rescue Department's Bureau of Fire Prevention on October 2, 2004, and did not file her EEOC charge until June 29, 2007. Therefore, the court agrees that summary judgment is due to be granted as to any claims that arose while plaintiff worked in the Public Services Administration Department.[3]  Therefore, any claims asserted by plaintiff which are based on the delay in promoting her to Secretary III and her transfer to the Mobile Fire-Rescue Department's Bureau of Fire Prevention are untimely.

## C. Plaintiff's Claims

The complaint asserts claims under Title VII, the ADEA, and the ADA; however, plaintiff concedes that she has no evidence that she was discriminated against on the basis of her age or any alleged disability.  Therefore, the only remaining claims arise under Title VII. Plaintiff asserts that the City of Mobile discriminated against her on the basis of her race and retaliated against her for filing grievances.

The court notes that, in opposition to summary judgment, plaintiff submitted several documents or portions of documents along with her brief.  Plaintiff's brief makes statements regarding the facts but does not cite to any evidence or otherwise support her statements. Because plaintiff is proceeding pro se, the court reviewed plaintiff's evidentiary submissions to determine whether they could demonstrate that material facts were at issue.  However, the court has been unable to glean any material information from plaintiff's submissions that contradict

---

preconditions specifically and with particularity, then the plaintiff's allegations are assumed admitted, and the defendant cannot later assert that a condition precedent has not been met." citations omitted).

[3] While it appears that other claims that arose after plaintiff's transfer to the Bureau of Fire Prevention may also be untimely, the untimeliness of other claims has not been specifically raised by defendant.

the material facts presented by the City of Mobile.  The court further notes that most of the facts

cited by the City of Mobile are supported by plaintiff's deposition testimony.

Plaintiff claims that she is unable to provide affidavits because the City employees from

whom she wanted to obtain affidavits were fearful of retaliation.  However, plaintiff has the

burden of supporting her claims.  She cannot simply rely on the allegations of her complaint. See

Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub

nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v. Int'l Union of

Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11th Cir. 1986)).  Moreover, as defendant

points out, the only person plaintiff names that she intended to obtain an affidavit from is Peggy

Taylor, who is reportedly no longer employed with the City and would not be fearful of losing

her job or presumably of any other retaliation as a result of her testimony.


### 1. Racial Discrimination

A  plaintiff may prove discrimination or retaliation by relying on either direct,

circumstantial, or statistical evidence.  See Walker v. Nationsbank of Florida N.A., 53 F.3d

1548, 1555 (11th Cir. 1995).   Direct evidence is evidence which, "if believed, proves the

existence of discriminatory motive 'without inference or presumption'" Hamilton v.

Montgomery County Bd. of Educ., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter

v. Three Springs Residential Treatment,132 F.3d 635, 641 (11th Cir. 1998)).  As the U.S.

District Court for the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an
> employer' but the actions or statements at issue must 'correlate to the
> discrimination or retaliation complained of by the employee.' Further, the
> statements 'must be made by a person involved in the challenged decision' and
> must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala. 1998)).

Plaintiff has submitted no direct evidence of discrimination or retaliation.  None of the evidence

offered proves without inference or presumption that the person who made the employment

decisions did so based on plaintiff's race.  Plaintiff has also not attempted to show discrimination through statistical evidence, but relies instead on circumstantial evidence.

A plaintiff may attempt to show discrimination based on circumstantial evidence through the application of the McDonnell Douglas burden-shifting analysis established by the Supreme Court. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, a plaintiff must first raise an inference of discrimination by establishing a prima facie case. See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997)).

 In order to make out a prima facie case of discrimination, a plaintiff must show:

> (1) [s]he is a member of a protected class; (2) [s]he suffered an adverse job action; (3) h[er] employer treated similarly situated employees outside h[er] classification more favorably; and (4) [s]he was qualified to do the job.

Barnes v. Crowne Investments, Inc., 391 F.Supp.2d 1108, 1115 (S.D. Ala. 2005) (citations omitted).

The first prong is satisfied as it is undisputed that plaintiff is a member of a protected class.  However, defendant appears to dispute the second and third prongs: that plaintiff suffered an adverse job action and that similarly situated employees outside her classification were treated more favorably.  Plaintiff claims that she was discriminated against by the denial of her request for leave with pay to attend a class in Paris, France; by being required to submit a doctor's note whenever she used sick leave; by having to work from 7:00 a.m. until 4:00 p.m. instead of from 8:00 a.m. until 5:00 p.m; by her transfer to the Mobile Communications Division; by not being allowed to use her uniform allowance to purchase a uniform jacket; by not being given a designated parking spot; by the relocation of her desk on three occasions after she began working in the Communications Department; by her being verbally counseled on August 17, 2007 for arriving late to work without contacting her supervisor to advise that she would be late; by the denial of her request to attend an employee health fair on October 25, 2007;  and by the denial of her request to use of the city's float for her high school reunion.

12

"While not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." Shannon v. BellSouth Telecommunications, Inc., 292 F.3d 712, 716 (11th Cir. 2002) (quoting Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1118 (11th Cir. 2001)).  While it is questionable whether any of plaintiff's complained-of events rise to the level of an adverse action, the court notes that some of the actions do affect the terms, conditions, or privileges of her employment.  Looking at the facts in the light most favorable to plaintiff, the court finds that some of the complaints may qualify as adverse job actions.

However, the court finds that plaintiff has not demonstrated that similarly situated employees outside her classification were treated more favorably in any of the situations she complains of.  To be appropriate comparators, the employees must be "similarly situated in all aspects." Holifield v. Reno, 115 F.3d 1555, 1563 (11th Cir. 1997).  "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted).  There is no evidence of any similarly situated employees with regard to any of her claims.  The only other secretary that worked at the Bureau of Fire Prevention was Pat Lilley, who the evidence indicates was treated the same.  For instance, Lilley did not have a designated parking spot and worked the same hours as plaintiff.  There is no evidence that Lilley 1) was granted leave with pay to attend a class, 2) after taking substantial sick leave was allowed to continue to take sick leave without submitting a doctor's note, 3) requested a transfer, 4) was allowed to use her uniform allowance to purchase a uniform jacket, 5) arrived late without contacting her supervisor to advise that she would be late, 6) was allowed to attend an employee health fair or similar event, or 7) was permitted to use the city's float for a private purpose.  Moreover, Lilley was a level II secretary and was only at the Bureau of Fire Prevention for a short time while plaintiff worked there, as Lilley retired on December 1, 2004.  All of the events

13

complained about occurred after Lilley retired.  All of the other secretaries that worked for the City of Mobile worked in different departments with different conditions and requirements.  The court finds that plaintiff has not shown that Lilley or any other secretary working for the City of Mobile is a similarly situated employee that was treated more favorably.  Accordingly, plaintiff has not established a <u>prima facie</u> case of discrimination.

Even if plaintiff could establish a prima facie case, the court finds that her discrimination claim would still fail.  If plaintiff could establish a <u>prima facie</u> case of discrimination, the burden would then shift to the defendant, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action.  The employer's burden is exceedingly light." <u>Hamilton</u>, 122 F.Supp.2d at 1280 (quoting <u>Meeks v. Computer Assoc. Int'l</u>, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations omitted)).  If the defendant proffers a legitimate reason for the employment decisions, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. <u>Id.</u>  "At the pretext stage, in order to survive summary judgment, Plaintiff[s] must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." <u>Miller v. Bed, Bath & Beyond, Inc.</u>, 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing <u>Combs</u>, 106 F.3d at 1538).  Plaintiff may do this  "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." <u>Id.</u> (citations omitted).  "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" <u>Hamilton</u>, 122 F. Supp.2d at 1281 (quoting <u>Combs</u>, 106 F.3d at 1539).  The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

In satisfying the ultimate burden of proving that the adverse employment action was on account of race, a plaintiff need not establish that race was the sole reason for the action, but that it was a determinative factor in the employer's decision. See Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1224 (11th Cir. 1982) (citing Haring v. CPC International, Inc., 664 F.2d 1234, 1239-40 (5th Cir. 1981)).  However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." Chapman, 229 F.3d at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).  It is not appropriate for either the plaintiff or this court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030.

In this case, defendant has clearly met its burden of proffering legitimate, non-discriminatory reasons for its actions.  For instance, plaintiff was required to work from 7:00 a.m. until 4:00 p.m. because those were the hours that the office was open.  Plaintiff was transferred to the Mobile Communications Division because she requested a transfer and there was an opening in that department.  Plaintiff was not allowed to use her uniform allowance to purchase a uniform jacket because plaintiff chose to wear civilian clothes and the jacket was only to be worn with the entire uniform.  Plaintiff's desk was moved the first time so that she would not be sitting out in the middle of the room and was moved again because of construction and a third time, after the construction was completed, away from the console where 911 calls were answered to provide a quieter working environment.  The City of Mobile also had obvious legitimate  business reasons for not allowing plaintiff, or any other employees, to take leave with pay to take a class that was not required for their job.  Thus, plaintiff has proffered legitimate non-discriminatory reasons for its actions.  The burden then shifts back to plaintiff to show that the City of Mobile's proffered reasons are pretextual.

After reviewing the evidence, the court finds that plaintiff has failed to offer sufficient evidence for a fact finder to conclude that the proffered reasons were not the actual motivation

for the City of Mobile's actions.  The evidence clearly supports the City of Mobile's proffered

reasons.  While plaintiff argues that the Bureau is required to provide service twenty-four hours a

day, there is no evidence that any employees are at the office after 4:00 p.m. on a regular basis or

that a secretary's services would be needed or even helpful during the off hours.  Plaintiff has

offered no evidence that indicates that any weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the City of Mobile's proffered legitimate reasons.  Plaintiff

has not demonstrated that a fact finder could find the proffered legitimate reasons unworthy of

credence.  Therefore, even if plaintiff could demonstrate a <u>prima facie</u> case, summary judgment

is due to be granted in favor of defendant on plaintiff's discrimination claim.


   **2. Retaliation**

   "[T]he same analytical framework applies to retaliation claims as applies to other

employment discrimination claims, including the availability of the <u>McDonnell Douglas</u>

presumption." <u>Wright v. Southland Corp.</u>, 187 F.3d 1287, 1305 (11th Cir. 1999) (citation

omitted).  As with plaintiff's discrimination claim, plaintiff has proffered no direct or statistical

evidence of retaliation.  Thus, plaintiff relies on the <u>McDonnell Douglas</u> burden shifting

analysis.

> A <u>prima facie</u> case of retaliation under Title VII requires the plaintiff to show
> that: (1) []he engaged in an activity protected under Title VII; (2) []he suffered an
> adverse employment action; and (3) there was a causal connection between the
> protected activity and the adverse employment action. <u>Pennington v. City of
> Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001).

<u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008).

   Plaintiff contends that her transfer on January 5, 2007, to the Mobile Communications

Division was in retaliation for her having filed a grievance in October 2006.  Internal complaints

about racial discrimination are statutorily-protected activities.  <u>See</u> <u>Pipkins v. City of Temple

Terrace, Fla</u>, 267 F.3d 1197, 1201 (11th Cir. 2001).   Plaintiff also believes that she was

retaliated against when she was denied a request to attend an employee health fair on October

25, 2007, and when she was denied the use of the city's float.  While it is not clear that all of the actions complained of are truly "adverse," the court finds that looking at the facts in the light most favorable to plaintiff that at least some of the actions could be found to be adverse.[4] Looking at the facts in the light most favorable to plaintiff, the court also finds that due to their proximity in time, that there is a sufficient causal connection between the actions and the grievances filed to support a prima facie case of retaliation.

Since plaintiff has met the elements of a prima facie case of retaliation, the burden then shifts to defendant to proffer legitimate non-retaliatory reasons for its actions.  As previously discussed with regard to plaintiff's claim of discrimination, the City states that plaintiff was transferred on January 5, 2007, because she requested a transfer.  There were no available Secretary III positions in the Fire Department and there was an opening in the Mobile Communications Division, so she was transferred to that department.  According to the City of Mobile, plaintiff was not allowed to attend the employee health fair because she needed to make further progress on her current assignment.  As to the denial of the use of the city's float, the City asserts that John Bell was no longer the proper person to grant permission to use the float. Additionally, plaintiff was out on medical leave at that time and the City was not going to release the float to an individual who apparently was not an employee or an officer of the City.

Plaintiff argues that transfer was not what she requested because she wanted to be transferred completely outside of the Fire Rescue Department.  However, the City of Mobile maintains that Chief Dean did not have the authority to effectuate a transfer to a department

---

[4] To maintain a claim of retaliation, the alleged adverse action must be "materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006).  To be actionable, the adverse action must be "likely to chill the exercise of constitutionally protected speech." Stavropoulos v. Firestone, 361 F.3d 610, 618 (11th Cir. 2004). The Supreme Court has characterized the anti-retaliation provision as protecting an individual not from all retaliation, but from retaliation that produces injury or harm. Burlington, 126 S.Ct. at 2414. The acts must be material and significant and not trivial. Id. 2405, 126 S.Ct. at 2415.

outside Fire Rescue.  To be transferred outside the Fire Rescue Department, plaintiff would have to find an available position in another department and her transfer would then have to be approved by the department where she wanted to be transferred.  Plaintiff also asserts that she should have been given more notice of her transfer.  However, according to the City of Mobile, it is not uncommon for employees of the Fire Rescue Department to be notified at the end of the week that their work location has been changed beginning with the next working day.  The timing of the notification was due to the normal process used to implement transfers.

After reviewing the evidence, the court finds that plaintiff has failed to offer any evidence from which a fact finder could find that the proffered reasons were not the actual motivation for the City of Mobile's actions.  Thus, the court finds that summary judgment is due to be granted in favor of defendant as to plaintiff's claim of retaliation.


### 3. Hostile Environment Claim

Plaintiff alleges the actions complained of above with regard to plaintiff's other claims created a hostile work environment.  According to the Eleventh Circuit, a hostile work environment claim is established:

> upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).  This court has repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim show: (1) that he belongs to a protected group;  (2) that he has been subject to unwelcome harassment;  (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin;  (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;  and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.  See, e.g., [Mendoza v. Borden, 195 F.3d 1238,1245(11th Cir. 1999)] (applying these factors in the context of a hostile environment sexual harassment claim).

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  There is no dispute

that plaintiff, as an African American, is a member of a protected group.  As to the second

criteria of a <u>prima facie</u> case, the court finds, looking at the fact in the light most favorable to

plaintiff, that there is sufficient evidence to indicate that plaintiff has been subjected to some

unwelcome treatment which plaintiff might regard as harassment.  However, there is no evidence

that the alleged harassment was racially based.  There is no evidence of any racially offensive

comments and there is no evidence that any non-black employees were treated differently.

 With regard to the fourth element, factors to consider include "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." <u>Harris v. Forklift Sys. Inc.</u>, 510 U.S. 17, 22-23 (1993).  An analysis of this issue

was stated by the Eleventh Circuit Court of Appeals as follows:

> To succeed at trial with her hostile environment claim Edwards must demonstrate
> that the actions of the defendants altered the condition of the workplace, creating
> an objectively abusive and hostile atmosphere. <u>Harris v. Forklift Sys., Inc.</u>, 510
> U.S. 17, ----, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993) ("When the
> workplace is permeated with 'discriminatory intimidation, ridicule, and insult'
> that is 'sufficiently severe or pervasive to alter the conditions of the victim's
> employment and create an abusive working environment,' Title VII is violated.")
> (internal citations omitted).  For example, the racial slurs allegedly spoken by co-
> workers had to be so "commonplace, overt and denigrating that they created an
> atmosphere charged with racial hostility." <u>E.E.O.C. v. Beverage Canners, Inc.</u>,
> 897 F.2d 1067, 1068 (11th Cir. 1990).  In deciding whether a hostile environment
> was created factors to consider include the frequency of the discriminatory
> conduct, the severity of the discriminatory conduct, whether the conduct is
> threatening or humiliating, and whether the conduct unreasonably interferes with
> the plaintiff's performance at work.  <u>Harris</u>, 510 U.S. at ----, 114 S.Ct at 372. ... A
> plaintiff may have a viable hostile environment claim even if the racial remarks
> were not directed at her. <u>Busby</u>, 931 F.2d at 785.

<u>Edwards v. Wallace Community College</u>, 49 F.3d 1517, 1521-22 (11th Cir. 1995).  "[T]o be

actionable, this behavior must result in both an environment that a reasonable person would find

hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive."

<u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1276 (11th Cir. 2002).  The evidence in this

case clearly does not support a finding that plaintiff's workplace was permeated with

discriminatory intimidation, ridicule, or insult.  There is no evidence that the atmosphere was

19

charged with racial hostility.  While plaintiff may have subjectively found the complained of actions to be humiliating, a review of the evidence does not support a finding that a reasonable person would find the environment to be racially hostile or abusive.

The court finds that the actions which plaintiff considered "harassment' were not based on plaintiff's race and were not sufficiently severe or pervasive to create a hostile work environment.  Therefore summary judgment is due to be granted in defendant's favor as to plaintiff's hostile work environment claim.

**CONCLUSION**

For the reasons discussed above, defendant's motion for summary judgment (Doc. 42) is **GRANTED**.


**DONE** and **ORDERED** this 19th day of February, 2010.


      /s/ Callie V. S. Granade
      CHIEF UNITED STATES DISTRICT JUDGE